**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Lisa J. Rodriguez (LR6767)
Donna Siegel Moffa (DSM4634)
8 Kings Highway West
Haddonfield, New Jersey 08033
(856) 795-9002
(856) 795-9887 - Facsimile

**Attorney for Plaintiff**
**(Additional Counsel on Signature Page)**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BART DAL PONTE, individually and for all others similarly situated, | : | |
| | : | |
| Plaintiff, | : | CASE NO. |
| | : | |
| vs. | : | |
| | : | |
| AMERICAN MORTGAGE EXPRESS CORP. and AMERICAN RESIDENTIAL LENDING CORP., | : | |
| | : | |
| Defendants. | : | JURY TRIAL DEMANDED |
| | : | |

## CLASS ACTION COMPLAINT

Plaintiff, Bart Dal Ponte, by his undersigned counsel, upon personal knowledge with

respect to himself and his own acts, and upon information and belief with respect to all other

matters, avers as follows:

1.      This is a consumer class action brought on behalf of consumers who accepted an

offer from American Residential Lending Corporation ("ARL"), a wholly-owned subsidiary of

American Mortgage Express, Corp. ("AME") (hereinafter collectively referred to as

"Defendants"), of a mortgage at an interest rate that was "locked in" and who, as a result of

Defendants' breach of contract and the unlawful conduct alleged herein, did not receive the promised interest rate and suffered damages as a result.

2.      Defendants, who market billions of dollars in mortgages nationwide, uniformly offered consumers, such as Plaintiff and members of the class, mortgage loans at interest rates that Defendants agreed  would "lock in" upon receipt of certain documents and payments from consumers.  In connection with these mortgages and lock-in agreements, Defendants provided disclosures to consumers, such as Plaintiff and members of the class, stating that the "locked in" interest rates would apply to their mortgage loans when, in fact, Defendants had not taken the actions necessary to ensure that such loans would be provided at the rates and terms disclosed.  As a result, Defendants' disclosures concerning the costs and terms of the credit offered were not true at the time they were made and were made in bad faith in violation of the Truth-In-Lending Act, 15 U.S.C. § 1601, *et seq.*

3.      In addition, in or about August 2003, Defendants adopted a standard practice of reneging on its agreements with consumers – including Plaintiff and members of the class – to provide mortgage loans at a promised "locked in" interest rate, and routinely breached such agreements.  As a result, Plaintiff and members of the class had to secure alternative financing at higher interest rates resulting in damages to them and, where the higher loan was secured through Defendants, unjustly enriching Defendants.  Members of the class who secured funding through another lender also suffered losses by the payment of application fees that were not returned; defendants were unjustly enriched thereby.

4.      Plaintiff Bart Dal Ponte, on behalf of himself and the Class (defined in Paragraph 27), seeks compensatory and statutory damages, attorneys' fees and costs for Defendants' violations of the Truth-in-Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA") and the New Jersey

Consumer Fraud Act, N.J.S.A. 56:8-2 et seq., as well as for Defendants' common law breach of contract, and common law unjust enrichment.

**THE PARTIES, JURISDICTION AND VENUE**

5.      Plaintiff Bart Dal Ponte is an individual who resides and owns property in California. During all relevant times, he owned residential properties at 27632 West Shore Drive, Lake Arrowhead, San Bernardino, California and at 3806 Sunbeam Drive, Los Angeles, California (collectively "the Properties").

6.      Defendant American Mortgage Express Corp. ("AME") is a New Jersey corporation headquartered in Cherry Hill, New Jersey.  AME is one of New Jersey's largest independent mortgage bankers and, upon information and belief, AME originated over one billion dollars in mortgages in fiscal year 2003.  AME is licensed in approximately thirty states, and conducts business in California under the name American Residential Lending Corp.

7.      American Residential Lending Corp. ("ARL") is wholly-owned subsidiary of AME.  ARL is registered to do business in California and, upon information and belief, does business from various AME-owned offices, including an office in Mount Laurel, New Jersey.

8.      This court has subject matter jurisdiction over this action under 15 U.S.C. § 1640(e), relating to claims under TILA, and under 28 U.S.C. § 1331 relating to action arising under the laws of the United States.  Supplemental jurisdiction exists over the state law claims under 28 U.S.C. § 1367.

9.      This court is the proper venue for this action under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

10.    In or about June 2003, Plaintiff sought to take advantage of low interest rates, and began shopping for lenders willing to refinance his Properties at lower interest rates.

11.    On or about June 5, 2003, Plaintiff telephoned Defendants in response to an advertisement in the Los Angeles Times. Plaintiff was immediately connected to a loan officer employed by Defendants.

12.    Defendants' loan officer interviewed Plaintiff and obtained from Plaintiff truthful information concerning the Properties and Plaintiff's finances.

13.    During the phone interview, Defendants' loan officer used his computer to perform a credit check on Plaintiff. The loan officer reported to Plaintiff that Plaintiff had an excellent credit history and was otherwise eligible to receive mortgage loans for the Properties from Defendants.

14.    During the telephone interview, Defendants' loan officer unambiguously informed Plaintiff that Defendants would provide two mortgage loans totaling $ 470,200.00 at a fixed interest rate of 4.25% each. The loan officer further informed Plaintiff that, in order to "lock in" the 4.25% interest rates, he was required to pay the application fees, sign and return "loan applications" that Defendants would mail to Plaintiff later in the day, and send some financial information (such as income and tax records). Nothing else was required to lock in the 4.25% interest rate.

15.    During the telephone interview, after Defendants represented that Plaintiff had been approved for mortgage loans at the 4.25% interest rate, Plaintiff agreed to pay a $375.00 application fee for each loan. Plaintiff provided Defendants' loan officer with his credit card information, and Plaintiff's credit card account was immediately charged $750.00.

-4-

16.     All of the actions and representations of Defendants' loan officer during the above-described telephone interview were undertaken pursuant to Defendants' standard, company-wide practices.

17.     Within a few days of the above telephone interview, Plaintiff received from Defendants the promised loan applications and various other documents. These materials were accompanied by a cover page dated June 5, 2003 that read as follows: "Please be advised that due to the time sensitive nature of your rate lock-in agreement, we can only honor your interest rate lock-in agreement upon receipt of your signed loan application within 10 days (including weekends and holidays) of the date of this letter: 06/15/03."

18.     For each of the Properties, the June 5, 2003 package included documents that disclosed an applicable interest rate of 4.25%. These documents included, *inter alia*: (i) a Uniform Residential Loan Application indicating the agreed-upon 4.25% interest rate; (ii) a "Federal Truth-In-Lending Disclosure Statement" indicating an annual percentage rate corresponding to the agreed-upon 4.25% interest rate; and (iii) a document entitled "Good Faith Estimate" indicating the agreed-upon 4.25% interest rate.

19.     Upon information and belief, the documents received by Plaintiff that disclosed an interest rate consistent with the rate that the Defendants had offered to lock in, for consideration paid by Plaintiff, were uniform standard documents, routinely used by Defendants and completed in accordance with Defendants' routine practices in processing a mortgage loan when a customer had paid to lock in an interest rate.

20.     As instructed to do by Defendants, Plaintiff immediately completed and returned all of the paperwork included in the June 5, 2003 package.

21.     Although Defendants guaranteed in its disclosures made pursuant to, *inter alia*, the federal Truth-In-Lending Act that funding was available for Plaintiff's loans at the 4.25% interest rate, defendants in fact "floated" large numbers of mortgage loan commitments expecting that interest rates would continue to decline.  Accordingly, when interest rates did not continue to decline as expected, Defendants faced the possibility of substantial losses if they were to close on their pending mortgage loans to Plaintiff and hundreds (and possibly thousands) of other consumers.

22.     Rather than live with the consequences of their negligent or reckless underwriting practices, Defendants instructed their loan officers to "upsell" their pending mortgage loan portfolios by canceling existing agreements, providing customers with false reasons for the cancellations, and, if possible, deceptively steering the customers into loans with Defendants at higher interest rates.  Defendants' illegal conduct in this regard is the subject of a verified complaint recently filed against defendants by two former loan officers in a Pennsylvania lawsuit entitled Lewandowski, et al. v. American Mortgage Express Corp., et al., Civil Action No. 000338, November 2003 Term (Pa. Common Pleas Court, Phila. Cty.) (attached as Exhibit A).

23.     In or about August 2003, Defendants, acting pursuant to the illegal and unconscionable scheme described above, contacted Plaintiff and falsely informed him that one of the mortgages could not be closed due to delays in the receipt of paperwork from third parties, and that they would not close on the other mortgage because they wanted to close on both at the same time.

24.     Several weeks after Defendants deceptively and unilaterally breached their agreement to provide Plaintiff with mortgage loans for the Properties at the 4.25% interest rate, Plaintiff – unable to find new loans anywhere near the 4.25% interest rate and unaware of

Defendants' illegal conduct – agreed to obtain from Defendants mortgage loans for the Properties at a new interest rate of 4.875%. Defendants provided Plaintiff with a new package of documents that, with the exception of the higher interest rate, were substantially identical to the materials previously sent on June 5, 2003. Plaintiff returned the materials, and the 4.875% mortgage loans closed without delay.

## CLASS ACTION ALLEGATIONS

25. Plaintiff brings this action individually on behalf of himself and as a class action pursuant to Rule 23(a), 23(b)(2), and 23 (b)(3) of the Federal Rules of Civil Procedure on behalf of the following:

> All persons who received, accepted and paid for an offer from American Mortgage Express Corp. or American Residential Lending Corporation to "lock in" a fixed interest rate for a mortgage loan that Defendant failed to deliver as promised, and who suffered damages as a result. Excluded from the Class are the defendants and their employees, officers, or directors.

26. The Class is so numerous and geographically dispersed that joinder of class members would be impracticable. Based on the extent of Defendants' activities, Plaintiff expects that there will be hundreds (if not thousands) of Class members.

27. Plaintiff is a member of the Class and his claims are typical of the claims of the members of the Class. Defendants have followed the same or a similar course of conduct in (1) promising Plaintiff and other consumers an interest rate on loans that they had not funded, thereby rendering their disclosures false and inaccurate; and (2) reneging on their agreement to deliver a mortgage loan with the locked in rate.

28. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel experienced in litigation of this type. Plaintiff has no conflict-of-interest with other members of the Class.

29.     There are questions of law or fact common to the Class and these questions predominate over any questions affecting only individual members.  Among the questions of law or fact common to members of the Class are:

a.     whether Defendants violated TILA's disclosure requirements?

b.     whether Defendants violated the New Jersey Consumer Fraud Act?

c.     whether Defendants breached  their agreements with Class members?

d.     whether Defendants have been unjustly enriched to the detriment of the members of the Class?

e.     whether Plaintiff and Class members have been damaged, and if so, what is the proper measure of damages?

30.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, efforts, and expense that numerous individual actions would engender.  Class treatment will also permit the adjudication of relatively small claims by members of the Class who cannot individually afford to litigate such claims against corporate defendants.

## COUNT I

### FOR VIOLATION OF THE
### TRUTH-IN-LENDING ACT, 15 U.S.C. §§ 1601, ET SEQ.

31.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Defendants violated the requirements of the Truth-in-Lending Act of 1968, 15 U.S.C. §§ 1601, et seq. and regulations promulgated thereunder in the following and other respects:

a. by failing to accurately disclose the cost of the extension of credit in a manner that is clear and conspicuous and not misleading, in violation of 15 U.S.C. § 1632(a) and 12 C.F.R. § 226.17(a);

b. by falsely representing to Plaintiff and members of the Class in bad faith that Defendants had locked-in a specified interest rate, when, in fact, Defendants were not in a position to deliver, and had no intention of delivering, the promised rate and could not truthfully state with certainty that the promised rate would apply in violation of 15 U.S.C. § 1638(b)(2), and 12 C.F.R. § 226.17-19, requiring that defendants make good faith estimates of required disclosures, including the Annual Percentage Rate which is based on the interest rate, prior to the time that credit is extended;

c. by failing to base the disclosure of the estimated interest rate and APR to Plaintiff and members of the Class on the "best information reasonably available," in violation of 12 C.F.R. § 226.17(c)(2), as the best information available to Defendants revealed that Defendants could not deliver the estimated interest rate or APR;

d. by falsely representing to Plaintiff and members of the Class that the loans made by Defendants would have the stated "locked-in" interest rate, while intending to charge and actually charging a higher interest rate and corresponding APR on loans in violation of TILA's requirement that estimates of the loan terms must be made in "good faith";

e.      by making disclosures that did not reflect "the terms of the legal

obligations between the parties" that were negotiated during telephone conversations in violation

of 12 C.F.R. § 226.17(c)(1);

f.      by failing to make disclosures of the interest rate and APR for

Plaintiff and members of the Class "clearly and conspicuously" in violation of 15 U.S.C. §

1632(a) and 12 C.F.R. § 226.17 which require that disclosures must be made;

g.      by making misleading disclosures that would have led a reasonable

consumer to believe that the lock in rate was guaranteed; and

33.     By reason of Defendants' violations of TILA, the Defendants are liable to

Plaintiff and the Class for damages and attorneys' fees and costs in accordance with 15 U.S.C. §

1640.

## COUNT II

### FOR VIOLATION OF NEW JERSEY'S
### CONSUMER FRAUD ACT, N.J.S.A. 56:8-2 et seq.

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

35.     Plaintiff and members of the Class entered agreements with Defendants pursuant

to which Defendants promised to offer mortgage agreements at a particular interest rate if

Plaintiff and members of the class qualified for the mortgage.

36.     When Defendants entered into lock-in agreements and failed to secure funds at

the promised rates, Defendants negligently or recklessly gambled that they would be able to

perform as promised.

37.     Defendants' representations as to their ability to deliver the locked in interest rate

for which Plaintiff and the members of the class had paid were false and misleading.

-10-

38.     Defendants used false pretenses and false promises to induce Plaintiff and members of the Class to pay for a locked in interest rate.

39.     Defendants knowingly concealed and failed to disclose that they did not have funds at the locked in interest rates.

40.     Defendants acted unconscionably when they directed their loan officers not to close mortgage loans at the locked in interest rates so that Defendants would not experience reduced profits on the mortgages.

41.     The conduct described in this Count and in the previous allegations of the complaint, including the allegations that Defendants violated the TILA, violates the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2.

42.     As a result of Defendants' conduct as set forth in this Complaint, in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, Plaintiff and members of the Class have suffered ascertainable losses and Defendants have unlawfully obtained moneys from Plaintiff and members of the Class.

43.     By reason of Defendants' violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2, Defendants should have their deceptive practices enjoined and are liable to Plaintiff and members of the Class for treble damages, a refund of all moneys acquired by the unlawful means, costs and attorneys' fees, and other equitable remedies as the Court deems just and proper.

## COUNT III

### FOR BREACH OF CONTRACT

44.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

45.     Defendants breached their agreements with Plaintiff and members of the Class by failing to close on mortgages at the locked in interest rates.

46.     Defendants' conduct as alleged in this Complaint also breached the covenant of good faith and fair dealing applicable to their contracts with the Plaintiff and members of the Class.

47.     By reason of the Defendants' breach of contract, Defendants are liable to Plaintiff and the Class for actual damages, costs and attorneys' fees.

## COUNT IV

## FOR UNJUST ENRICHMENT

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     Defendants' actions, to the extent they forced Plaintiff and members of the class to pay application fees to Defendants and/or obtain mortgages through Defendants that had an interest rate above the "locked in" interest rate agreed to, resulted in the unjust enrichment of Defendants at the expense of the Plaintiff and the members of the Class.

50.     Defendants' actions constitute an unjust retention of a benefit to the loss of Plaintiff and the members of the Class, and Defendants' retention of such benefit are against fundamental principles of justice and are patently unfair.

51.     By reason of Defendants' unjust retention of such benefits and the proceeds therefrom, Plaintiff and members of the Class have suffered and continue to suffer financial injury and inequities that have resulted in substantial damages.

52.     As a result, the Defendants are liable to Plaintiff and members of the Class for actual damages, punitive damages, and costs and attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

1.     Declaring this action to be a proper class action and designating Plaintiff as the Class representative and Plaintiff's counsel as counsel for the Class;

2.     Awarding Plaintiff and the Class compensatory, statutory and punitive damages included but not limited to treble ascertainable losses pursuant to N.J.S.A. 56:8-19; a refund of all monies obtained by unlawful means pursuant to N.J.S.A. 56:8-2.11 and N.J.S.A. 56:8-2.12 and actual damages and penalties under TILA, 15 U.S.C. §1640, and such other amounts as are allowed by law and to be determined at trial;

3.     Awarding Plaintiff and the other members of the Class their costs and expenses, including reasonable attorneys' fees, expert fees, and other costs and disbursements; and

4.     Awarding Plaintiff and the Class such other relief as this Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury as to all issues so triable.

Dated: May 5, 2004

Respectfully Submitted,

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**

By: _____

Lisa J. Rodriguez (LR6767)
Donna Siegel Moffa (DSM4634)
8 Kings Highway West
Haddonfield, New Jersey 08033
(856) 795-9002
(856) 795-9887 - Facsimile

**TRUJILLO RODRIGUEZ & RICHARDS, LLC**
Peter Winebrake
The Penthouse
226 W. Rittenhouse Square
Philadelphia, PA 19103
(215) 731-9004
(215) 731-9044 – Facsimile

**LIEFF, CABRASER, HEIMANN &**
 **BERNSTEIN, LLP**
Kelly M. Dermody
Caryn Becker
Embarcadero Center West,
30th Floor, 275 Battery Street
San Francisco, California 94111-3339
(415) 956-1000
(415) 956-1008 - Facsimile

**LIEFF, CABRASER, HEIMANN &**
 **BERNSTEIN, LLP**
Elizabeth S. Watson
780 Third Avenue, 48th Floor
New York, NY 10017-2024
(212) 355-9500
(212) 355-9592 - Facsimile

**Attorneys for Plaintiff**

-14-

# EXHIBIT A

**NOVEMBER 2003**

Court of Common Pleas of Philadelphia County
Trial Division
# Civil Cover Sheet

For Prothonotary Use Only (Docket Number)

## 000338

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Robert Lewandowski | American Mortgage Express Corp. |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1422 Bleigh Avenue<br>Philadelphia, PA 19111 | 232 Clover Hill Court  Yardley, PA 19067 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| Natalie Ladyzhensky | Jack Mondel |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 13033B Blakeslee Court, Philadelphia, PA 19116 JURY FEE PAID | 540 Pelham Road Cherry Hill, NJ 08034 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
|  | Gregory Englesbe |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
|  | 5 Rockcress Way, Mt. Laurel, NJ 08054 |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 2 | 4 | ☑ Complaint   ☐ Petition Action   ☐ Notice of Appeal<br>☐ Writ of Summons   ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ $50,000.00 or less<br>☑ More than $50,000.00 | ☐ Arbitration<br>☑ Jury<br>☐ Non-Jury<br>☐ Other: ___ | ☐ Mass Tort<br>☐ Savings Action<br>☐ Petition | ☐ Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE (SEE INSTRUCTIONS)

   Tort: Other

STATUTORY BASIS FOR CAUSE OF ACTION (SEE INSTRUCTIONS)

N.J.S.A. 39:14-1 et seq.

RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER)

IS CASE SUBJECT TO
COORDINATION ORDER?

| | Yes | No |
|---|---|---|
| | ☐ | ☐ |
| | ☐ | ☐ |
| | ☐ | ☐ |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner Appellant:

Papers may be served at the address set forth below

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS (SEE INSTRUCTIONS) |
|---|---|
| Stanley B. Cheiken | 1626 Pine Street<br>Philadelphia, PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (215) 546-6177 | (215) 546-4698 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 62.106 | scheiken@earthlink.net |

| SIGNATURE | DATE |
|---|---|
| | 11/3/03 |

Defendant's Name

Joseph Santone

Defendant's Address

18000 Horizon Way
Mt. Laurel, NJ 08054

STANLEY B. CHEIKEN, ESQUIRE
Identification No. 62106
1626 Pine Street
Philadelphia, PA 19103
(215) 546-6177

ROBERT LEWANDOWSKI
1422 Bleigh Avenue
Philadelphia, PA 19111          JURY FEE PAID

-and-

NATALIE LADYZHENSKY
13033B Blakeslee Court
Philadelphia, PA 19116

-vs -

AMERICAN MORTGAGE EXPRESS CORP. d/b/a
AMERICAN RESIDENTIAL MORTGAGE
232 Clover Hill Court
Yardley, PA 19067

-and-

JACK MONDEL
540 Pelham Road
Cherry Hill, NJ 08034

-and-

GREGORY ENGLESBE
5 Rockcress Way
Mt. Laurel, NJ 08054

-and-

JOSEPH SANTONE
18000 Horizon Way          JURY FEE PAID
Mt. Laurel, NJ 08054

---

ASSESSMENT OF DAMAGES HEARING:
☑ IS ____ IS NOT REQUIRED
☑ JURY OF 12 PERSONS
____ NON-JURY ____ ARBITRATION

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
CIVIL DIVISION

OCTOBER TERM, 2003

NOVEMBER 2003

NO. _____

000338

**JURY TRIAL DEMANDED**

**M. CORNAGLIA
PRO. PROTHY**

NOV - 4 2003

**ATTEST**

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by an attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demanda expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazao al partier de la fecha de esta demanda y la notificacion. Hace falta asentar una comparencia escrita en persona o con un abogado y entegar a la corte en forma escrita sus defenses o sus objectiones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomare medidas y puede continuar la demanda en contra suya sin previo aviso a notificacion. Ademas, la corte puede decidir a favor del demandante y requirer que usted compla con todas las provisiones de esta demanda. Usted puede perder dinuer o sus propiedades o otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE. SI NO TIENE ABOGADO O SI NO

OFFICE SET FORTH BELOW TO FIND OUT WHERE
YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
ONE READING CENTER
PHILADELPHIA, PA 19107
(215) 238-1701

TIENE EL DINERO SUFICIENTE DE PAGAR TAL
SERVICIO, VAYA EN CUYA DIRECCION SE
ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR
DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASSOCIATION DE LICENCIADOS DE FILADELFIA
SERVICIO DE REFERENCIAL LEGAL
ONE READING CENTER
FILADELFIA, PENNSYLVANIA 19107
(215) 238-1701

STANLEY B. CHEIKEN, ESQUIRE  
Identification No. 62106  
1626 Pine Street  
Philadelphia, PA 19103  
(215) 546-6177

ASSESSMENT OF DAMAGES HEARING:  
___✓___ IS _____ IS NOT REQUIRED  
___✓___ JURY OF 12 PERSONS  
_____ NON-JURY _____ ARBITRATION

---

ROBERT LEWANDOWSKI  
1422 Bleigh Avenue  
Philadelphia, PA 19111  

    -and-

NATALIE LADYZHENSKY  
13033B Blakeslee Court  
Philadelphia, PA 19116  

    -vs.-

AMERICAN MORTGAGE EXPRESS CORP. d/b/a  
AMERICAN RESIDENTIAL MORTGAGE  
232 Clover Hill Court  
Yardley, PA19067  

    -and-

JACK MONDEL  
540 Pelham Road  
Cherry Hill, NJ 08034  

    -and-

GREGORY ENGLESBE  
5 Rockcress Way  
Mt. Laurel, NJ 08054  

    -and-

JOSEPH SANTONE  
18000 Horizon Way  
Mount Laurel, NJ 08054

:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:  
:

COURT OF COMMON PLEAS  
PHILADELPHIA COUNTY  
CIVIL DIVISION

OCTOBER TERM, 2003

NO. _____

**JURY TRIAL DEMANDED**

---

## COMPLAINT – CIVIL ACTION
### Tort: Other

Plaintiffs, ROBERT LEWANDOWSKI AND NATALIE LADYZHENSKY, by and through their

undersigned counsel, hereby bring this Complaint against Defendants and avers as follows:

1. Plaintiff ROBERT LEWANDOWSKI is an adult individual and a citizen of the Commonwealth of Pennsylvania who resides at the above-captioned address.

2. Plaintiff NATALIE LADYZHENSKY is an adult individual and a citizen of the Commonwealth of Pennsylvania who resides at the above-captioned address.

3. Defendant AMERICAN MORTGAGE EXPRESS CORP. d/b/a AMERICAN RESIDENTIAL MORTGAGE (hereinafter "ARM") is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its registered office located at 232 Clover Hill Court, Yardley, PA 19067. At all times relevant hereto, ARM has been licensed to engage in the business of mortgage banking in the Commonwealth of Pennsylvania and has regularly conducted that business in the City of Philadelphia.

4. Defendant JACK MONDEL is an adult individual and a citizen of the State of New Jersey who resides at the above captioned address. At all times relevant hereto, defendant MONDEL has been a corporate officer of ARM and has regularly transacted business in the City of Philadelphia.

5. Defendant GREGORY ENGLESBE is an adult individual and a citizen of the State of New Jersey who resides at the above captioned address. At all times relevant hereto, defendant Englesbe has been an employee of ARM with managerial authority and has regularly transacted business in the City of Philadelphia.

6. Defendant JOSEPH SANTONE is an adult individual and a citizen of the State of New Jersey who maintains an office for transacting business at the above captioned address. At

2

all times relevant hereto, defendant Santone has been a corporate officer of ARM and has regularly transacted business in the City of Philadelphia.

7.    Plaintiff Robert Lewandowski was hired by ARM as a Loan Officer commencing in March 2003.

8.    As compensation for his services, ARM agreed to pay Plaintiff Lewandowski a non-refundable draw in the amount of $3,000 twice per month, plus $200 per week for opening and closing the company's Mount Laurel, New Jersey offices on weekends. In addition, Plaintiff Lewandowski was entitled to 28% of the gross revenue on all loans closed by him.

9.    Natalie Ladyzhensky was hired by ARM as a Loan Officer commencing on June 2, 2003.

10.    As compensation for her services, ARM initially agreed to pay Plaintiff Ladyzhensky a non-refundable draw in the amount of $700 twice per month. In July 2003, her compensation was increased to $900 twice per month. In addition, Plaintiff Ladyzhensky was entitled to commissions in the amount of 25% of the gross revenue on loans closed by her.

11.    At all times, Plaintiffs worked form Defendant ARM's office, located at Suite 100, 18000 Horizon Way, Mount Laurel, New Jersey 08054. Nevertheless, Plaintiffs solicited and closed loans in the Commonwealth of Pennsylvania and the City of Philadelphia.

12.    Unbeknownst to Plaintiffs at the time, throughout their employment, ARM engaged in the illegal practice of "floating" loans that it had promised customers were locked-in at a specific interest rate.

13.    This practice unwittingly exposed ARM's customers to the risk of losing their

3

guaranteed interest rates, or their loans altogether.

14.     In the summer of 2003, mortgage interest rates rose sharply.

15.     As a result of its having floated a substantial number of loans. ARM found itself in the position of facing huge losses if it were to close on the loans at the interest rates guaranteed to customers.

16.     At that time, Defendants Englesbe and Santone, both managers of ARM, informed Plaintiffs and others about ARM's practice of floating loans, told them that the practice had backfired, and stated that ARM was unable to close on a substantial number of loans that ARM had promised its customers were locked in.

17.     Throughout the month of August 2003, Plaintiffs and other Loan Officers were repeatedly instructed by Defendants Englesbe and Santone to lie to customers about the reason for their loans being cancelled, and to "upsell" customers by misrepresenting the customers' creditworthiness and concealing the facts regarding ARM's unlawful conduct.

18.     Plaintiffs were repeatedly told that their future employment depended upon their ability to upsell customers whose loans were being cancelled, as well as their willingness to be complicit in ARM's misconduct

19.     Plaintiffs repeatedly informed Defendants that they would not lie to customers.

20.     Plaintiff Lewandowski met with Defendant Mondel later in the summer of 2003. At that time. Defendant Mondel conceded to Plaintiff Lewandowski that what ARM had done was wrong. Nevertheless. Defendant Mondel encouraged Plaintiff Lewandowski to lie to customers and attempt to upsell their loans. He further instructed Plaintiff Lewandowski not to

4

complain about his predicament and not to disclose any information that would reveal the unlawful conduct of ARM.

21.     Plaintiff Lewandowski told Defendant Mondel that he would not lie to customers, or otherwise assist ARM in its effort to conceal its unlawful conduct. Whereupon, Defendant Mondel stated that the future employment and that of ARM's Loan Officers depended on their ability to follow management's instructions to upsell loans.

21.     On August 26, 2003, Plaintiff Ladyzhensky's employment was terminated. At that time, she was told by Defendant Englesbe that she had to be let go because she would not upsell the customers whose loans ARM had cancelled.

22.     On September 22, 2003, Plaintiff Lewandowski's employment was terminated. At that time, Dana Kellum, ARM's Director of Human Resources, informed Plaintiff Lewandowski that he was being terminated because he continued to complain about management's conduct and refused to follow Defendant Mondel's instruction to upsell loans.

### COUNT I
### NEW JERSEY CONSCIENTIOUS EMPLOYEE PROTECTION ACT
### PLAINTIFFS VS. ALL DEFENDANTS

23.     The averments contained in paragraphs 1 through 22 above are incorporated by reference as though fully set forth herein.

24.     Pursuant to the New Jersey Conscientious Employee Protection Act, N.J.S.A. 39:14-1 *et seq.*, Plaintiffs are entitled to protection from retaliation for objecting to, or refusing to participate in activity which they reasonably believe is fraudulent, criminal, or in violation of law.

5

25.    Plaintiffs objected to and refused to participate in the unlawful conduct of Defendants in floating loans and upselling customers under false pretenses.


26.    In retaliation for Plaintiffs' protected conduct, Defendants terminated their employment.

27.    As a result of Defendants' conduct, Plaintiffs have suffered monetary damaged including lost wages and benefits and damage to their reputations and earning capacities.

28.    As a result Defendants' conduct, Plaintiffs have suffered emotional distress, embarrassment, humiliation and loss of life's pleasures.

29     As a result of Defendants' conduct, Plaintiff Ladyzhensky has been and will be required to expend monies for medical treatment.

WHEREFORE, Plaintiffs respectfully requests that this Court find in their favor and against Defendants, jointly and severally, and:

a     Award Plaintiffs backpay, frontpay and/or reinstatement with full benefits and emoluments of employment retroactive to their dates of termination.

b.    Award compensatory damages, punitive damages and such other monetary relief as the Court deems just;

c.    Award Plaintiffs their costs, including expert witness fees and reasonable attorneys fees; and

d.    Grant such other relief as the Court deems just and proper.

6

## COUNT II
### BREACH OF CONTRACT
### ROBERT LEWANDOWSKI VS. ARM

30.    The averments contained in paragraphs 1 through 29 above are incorporated by reference as though fully set forth herein.

31.    In connection with his employment, Plaintiff Robert Lewandowski produced loans that were ready for closing, thereby earning his commissions.

32.    Through no fault of his own, and solely due to Defendants' unlawful actions as described hereinabove, ARM cancelled said loans.

33.    Defendant ARM has failed and refused to compensate him for the commissions earned on cancelled loans.

34.    The conduct of Defendant ARM as aforesaid constitutes a breach of contract.

35.    As a result of said conduct, Plaintiff Robert Lewandowski has suffered monetary damages in the form of lost commissions in the amount of $29,000, or such other amount as should be determined after discovery.

WHEREFORE. Plaintiff Robert Lewandowski demands judgment in his favor and against defendant American Mortgage Express Corp. d/b/a American Residential Mortgage in the amount of $29,000. together with interest and costs of suit.

## COUNT III
### BREACH OF CONTRACT
### NATALIE LADYZHENSKY VS. ARM

36.    The averments contained in paragraphs 1 through 35 above are incorporated by reference as though fully set forth herein.

7

37.     In connection with her employment, Plaintiff Natalie Ladyzhensky produced loans that were ready for closing, thereby earning her commissions.

38.     Through no fault of her own, and solely due to Defendants' unlawful actions as described hereinabove, ARM cancelled said loans.

39.     Defendant ARM has failed and refused to compensate her for the commissions earned on cancelled loans.

40.     The conduct of Defendant ARM as aforesaid constitutes a breach of contract.

41.     As a result of said conduct, Plaintiff Natalie Ladyzhensky has suffered monetary damages in the form of lost commissions in the amount of $10,145, or such other amount as should be determined after discovery.

WHEREFORE, Plaintiff Natalie Ladyzhensky demands judgment in her favor and against defendant American Mortgage Express Corp. d/b/a American Residential Mortgage in the amount of $10,145, together with interest and costs of suit.

Date: November 3, 2003

STANLEY B. CHEIKEN, ESQUIRE

1626 Pine Street
Philadelphia, PA 19103
(215) 546-6177

*Attorney for Plaintiffs*

8

# VERIFICATION

I, NATALIE LADYZHENSKY, hereby state that I am the PLAINTIFF in the instant action, and that the facts contained in the forgoing COMPLAINT are true and correct to the best of my knowledge, information and belief.  This Verification is made subject to the penalties provided in 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

_____
NATALIE LADYZHENSKY

# VERIFICATION

I, ROBERT LEWANDOWSKI, hereby state that I am the PLAINTIFF in the instant

action, and that the facts contained in the forgoing COMPLAINT are true and correct to the best

of my knowledge, information and belief.  This Verification is made subject to the penalties

provided in 18 Pa.C.S. §4904, relating to unsworn falsification to authorities.

ROBERT LEWANDOWSKI